IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                                                    Criminal No. **3:24CR138**

JOHN HUNTER RAINES,

     Petitioner.

## MEMORANDUM OPINION

John Hunter Raines, a federal inmate proceeding *pro se*, filed this 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. ("§ 2255 motion," ECF No. 57.) In his § 2255 motion, Raines contends that he is entitled to relief on the following four grounds:[1]

Claim One:    Counsel rendered ineffective assistance because he "pressured and coerced Mr. Raines into accepting a plea deal by lying to him about the government agreeing to request sentencing within the assigned guidelines of 46–57 months or less, only later on to tell him that he did not get it in writing." (*Id.* at 4 (internal quotation marks omitted).)

Claim Two:    "Mr. Raines was prejudiced in the Court" because "the Judge was biased due to the media publicity this case received." (*Id.* at 5.)

Claim Three:    "The prosecution erred when they argued for a higher sentence as a deterrent due to this not being the first time the [Virginia Birth-Related Neurological Injury Compensation Program ("VBIF")] was a target of a 'crooked insider.'" (*Id.* at 7.)

Claim Four:    Counsel rendered ineffective assistance when he "failed to obtain a psychiatric evaluation on Mr. Raines." (*Id.* at 8.)

The government has filed a response. (ECF No. 62.) Raines has filed a reply. (ECF No. 63.) Raines's claims are entirely meritless and show a continued refusal to accept any personal responsibility for his actions. Therefore, the § 2255 Motion (ECF No. 57) will be DENIED.

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the capitalization, punctuation, and spelling in quotations from the parties' submissions.

## I.    PROCEDURAL HISTORY

### A.    Indictment and Guilty Plea

On September 20, 2024, the government issued a criminal information charging Raines with one count of mail fraud, in violation of 18 U.S.C. § 1341 (Count One), and one count of engaging in monetary transactions in criminally derived property, in violation of 18 U.S.C. § 1957 (Count Two).  (ECF No. 13, at 1, 8–10.)  According to the information, Raines, who was the Deputy Director and Chief Financial Officer of the VBIF, embezzled more than $4.8 million from the VBIF.  (*Id.* ¶¶ 2, 10.)  On October 8, 2024, Raines waived indictment, (ECF No. 20), and entered into a plea agreement to both counts.  (ECF No. 21 ¶ 1.)  In the agreement, Raines acknowledged that he understood that he could receive a maximum sentence of twenty years for Count One and ten years for Count Two.  (*Id.*)  The plea agreement specifically noted that the government "ma[de] no promise or representation concerning what sentence the defendant will receive, and the defendant cannot withdraw a guilty plea based upon the actual sentence."  (*Id.* ¶ 4.)  The plea agreement also stipulated that the parties would recommend to the Court that Raines's base offense level under the United States Sentencing Guidelines ("USSG") would be 25, and that he would receive a one-level increase because his conviction was under 18 U.S.C. § 1957, and an additional two-level increase for abuse of a position of trust.  (*Id.*)  Raines further agreed that he understood that "should the guidelines calculation applied by the Court at sentencing differ from the parties' agreements, the defendant will not be able to withdraw his guilty plea."  (*Id.*)  Raines also agreed that "[t]he United States and the defendant have not agreed on any further sentencing issues," and that "[a]ny stipulation on a Guidelines provision does not limit the parties' arguments . . . including arguments for a sentence within or outside the advisory Guidelines range found by the Court at sentencing."  (*Id.*)

2

**B.**     **Presentence Report and Motion for Upward Variance**

Prior to sentencing, a Presentence Investigation Report ("PSR") was prepared. Raines's base offense level was 7. (ECF No. 39 ¶ 19.) Because the amount of loss was more than $3,500,000 but less than $9,000,000 his offense level was increased by 18. (*Id.* ¶ 20.) Raines received an additional one-level increase because he was convicted under 18 U.S.C. § 1957, (*id.* ¶ 21), and another two-level increase because he abused a position or public of private trust or used a special skill in a manner that facilitated the commission or concealment of the offense (*id.* ¶ 23). Raines's adjusted offense level was 28; however, he received a three-level deduction for acceptance of responsibility, and a two-level reduction for being a "Zero-Point Offender," resulting in a total offense level of 23. (*Id.* ¶¶ 25–30.) Because Raines had no criminal history points, his criminal history category was I, and his advisory guidelines range was 46 to 57 months of incarceration. (*Id.* ¶ 77.)

The government filed a motion for an upward variance seeking a six-level increase in offense level amounting to a guideline range of 87 to 108 months and ultimately asking for a sentence of 96 months of imprisonment. (ECF No. 30, at 1–2.)

Although counsel filed no objections to the PSR, he filed a lengthy memorandum explaining why a downward departure from the guidelines was warranted. (ECF No. 33.) In it, Raines argued that he had no criminal history and was taking responsibility for his actions, he had addressed the root causes of his criminal behavior which was alcoholism and a gambling addiction, he had completed a thirty-day impatient program, participated in the court-ordered Alcoholics Anonymous ("AA") program and attended 100 meetings, and made several other arguments about Raines's changed lifestyle, and that he was a father. (*Id.* at 2–3.) Counsel argued that a 24-month sentence was appropriate. (*Id.* at 6.)

3

On February 21, 2025, the Court entered an Order

> plac[ing] the parties on notice that it will consider an upward variance from the Guidelines sentencing range of 46 to 57 months set forth in the Presentence Investigation Report ("PSR") submitted on February 18, 2025. The Court believes that the nature and circumstances of the offense and the history and characteristics of the defendant, as reflected both in the charged conduct and the other conduct described in the PSR, may warrant an upward variance in this case. The parties may address the Court's concerns in additional briefing or in their oral arguments at the sentencing hearing.

(ECF No. 35, at 1.)

### C.    Sentencing

During sentencing, on March 5, 2025, the Court first noted that Raines owed $6,588,301.97 in restitution and the forfeiture amount was $4,530,257.40. (ECF No. 67, at 3.) In response to the Court's question about the nature of his arguments, counsel informed the Court that it was seeking a downward variance from the Guidelines to 24 months. (*Id.* at 6, 11.) Raines's wife testified, explaining that Raines had addictions to alcohol and gambling, but that he was attending AA and working with a counselor, was sober, and had made a payment of $162,000 to the law firm for the VBIF. (*Id.* at 12–15.) The Court explained that it had received letters in support of Raines as well as letters from many victims. (*Id.* at 21–24.) The Court heard from counsel for the VBIF who explained that Raines had been less than cooperative in providing them with financial records to try to track down where Raines moved the funds he embezzled, but that all of the money was probably gone. (*Id.* at 34–37.)

The government argued that Raines was not entitled to a downward variance based on the fact that he had no criminal history because the guidelines had already taken that into consideration. (*Id.* at 41.) The government also argued that Raines was not entitled to a downward variance simply because he was a father, because prison sentences always have negative effects on the lives of others. (*Id.* at 41–42.) In support of the motion for upward variance, the government

4

argued that another individual stole $750,000 from the VBIF less than two decades ago and was sentenced to eight years of incarceration, and "the fraud loss [in Raines's case was] staggering in comparison." (*Id.* at 42–44.) The government argued that Raines's embezzlement:

> were not isolated instances of indiscretion. Raines stole dozens of times over the course of at least 21 months stealing $6.7 million. All so he could live the high life. He gambled at casinos, and to answer one of the questions from earl[ier], a lot of that money, the vast majority of this money, was gambled away
>
> He hosted extravagant trips to vineyards by chauffeured limousines, paid money to his wife, paid money to his mistress, took friends on private jet trips. He also bought luxury golf carts and cryptocurrency, gold and silver. And the nature of this spending makes clear that Raines was driven by one thing and one thing alone, insatiable []greed.

(*Id.* at 44–45.) The government agreed that Raines had taken steps to address his gambling and alcohol substance abuse disorder, but neither of those problems "have a sufficient nexus to the crime that on its face is driven by wanton greed." (*Id.* at 46.)

In response, counsel argued that Raines had "gone above and beyond" what the Court asked him to do in attending AA meetings, because he was leading meetings, he sold assets and made a $162,000 payment to the VBIF, had attended Gamblers Anonymous meetings, had substance abuse treatment and counseling, and had volunteered at church. (*Id.* at 49–51.) Counsel argued that Raines's case was different from the embezzlement from the VBIF in 2010, because that was a sophisticated scheme rather than embezzlement "driven by someone addicted to gambling and simply flowing money out and wasting it." (*Id.* at 51–52.)

The Court reviewed the 18 U.S.C. § 3553(a) factors, (*id.* at 62–67), and then explained as follows:

> The defendant moves for a sentence of 24 months saying that the defendant has made restitution as well as he can. He [is] in recovery from addiction. He confessed quickly to this. He has cooperated more than reasonably I think with the fund in this case.

> There is an argument that shorter sentences lead to deterrence with white collar criminals. I am going to deny the motion for downward variance in this case. It is just too much money to go below the guidelines in this case. The government wants a sentence above, essentially double the guidelines, 96 months. Essentially what they say is that the theft went on and on and on, twenty-one months, that they funded a lavish lifestyle, that there was greed and deceit in this, that deterrence is obviously incredibly important in this case.
>
> That the prior sentence that this court gave out ten years ago, obviously didn't send a message. The disruption to the government agency, the seriousness of the offense, the harm to doctors, the harm to families, the disruption of the government operation, it just—I just cannot get past the fact that the money was taken from a benefit program for people who were helpless.
>
> I also sent a notice to the parties that I was consider[ing] varying upward for much the same reason that the government stated. This crime just can't be unaddressed.
>
> This crime just, this crime needs to—this sentence needs to speak to the public that when money is set aside for people who need it we can't just steal. This is not like a theft from Bank of America. This is a theft from people of Virginia.

(*Id.* at 67–68.) The Court then sentenced Raines to 108 months of imprisonment. (*Id.* at 69.)

Since the Court entered judgment against Raines on March 10, 2025, Raines has tried many avenues to challenge his conviction and sentence. First, Raines filed a motion for recusal and a motion for modification of sentence that the Court construed as a motion for compassionate release and subsequently denied. (ECF Nos. 46–48, 53.) Raines then filed two motions to reduce sentence that the Court also denied. (ECF No. 54–55, 58.) On June 10, 2025, Raines filed the § 2255 motion that is before the Court. (ECF No. 57.) On June 18, 2025, Raines filed a notice of appeal, and on December 3, 2025, the United States Court of Appeals for the Fourth Circuit affirmed. (ECF No. 70). On June 24, 2025, Raines filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 raising the same claims as in his § 2255 Motion. *See Raines v. Warden-FCI Petersburg Camp*, No. 3:25CV478, 2025 WL 2772754, at *1–2 (E.D. Va. Sept. 29, 2025). On September 29, 2025, the Court dismissed the § 2241 petition for lack of jurisdiction. *See id.* at *3.

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

### A.    Standard for Ineffective Assistance Claims

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Any assertion by Raines that he would not have pleaded guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea,

including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70.

In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). In light of the strong presumption of verity that attaches to a petitioner's declarations during his plea proceedings, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted). Thus, the Fourth Circuit has admonished that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221–22. No circumstances exist here that would lead the Court to consider Raines's prior sworn statements as other than truthful.

### B.    Ineffective Assistance Claims (Claims One and Two)

In Claim One, Raines contends that counsel rendered ineffective assistance because he "pressured and coerced Mr. Raines into accepting a plea deal by lying to him about the government agreeing to request sentencing within the assigned guidelines of 46-57 months or less, only later on to tell him that he did not get it in writing." (ECF No. 57, at 4 (internal quotation marks omitted).) Raines suggests that "[c]ounsel, acting in collusion with the Court, failed to advise the

petitioner of the correct and true sentence that he would receive in the plea agreement." (*Id.*) The record reflects that this is not true.

First, the government never agreed to any specific sentence range, and neither the Court nor counsel were required to advise Raines of the actual sentence he would receive. Indeed, no one knew what sentence Raines would receive at the time of his plea. Moreover, little discussion is needed here, as Raines's statements are belied by his validly entered plea agreement and his sworn assurances during the Rule 11 hearing. In his plea agreement, Raines agreed that he understood that the Court has jurisdiction to impose any sentence up to the statutory maximum, and that he and the government "ha[d] not agreed on any further sentencing issues . . . other than those set forth . . . in this plea agreement." (ECF No. 21 ¶ 4.) Raines also agreed that he understood that "[a]ny stipulation on a Guidelines provision does not limit the parties' arguments as to any other Guidelines provisions or sentencing factors . . . including arguments for a sentence within or outside the Advisory Guidelines range." (*Id.*)

During the Rule 11 hearing, Raines agreed that he was "under oath and that means that if [he said] anything that [was] false [he] could be charged with an additional crime of perjury or essentially lying under oath." (ECF No. 75, at 4.) Raines also agreed that he was "fully satisfied with the services and advice provided by" counsel. (*Id.* at 18.) The Court asked Raines: "Do you understand that there is no agreement with respect to sentencing, and that if you plead guilty I will determine the sentence?" (*Id.*) Raines answered in the affirmative. (*Id.*) Raines agreed that the plea Agreement was the complete agreement, and there were no side deals not contained in the plea Agreement, and that no one had made any promises or threats to induce his guilty plea. (*Id.* at 22–23.) The following exchange also took place:

> THE COURT: Again, I assure you, I remind you rather, there is no agreement with respect to sentencing, and so you will come back here at some future stage. I

don't—I never met Mr. Mann before, but he is apparently a pretty able criminal defense lawyer and I am sure he has given you some idea what the possible range of sentences are in this case. If you get a worse sentence than you are expecting you can't change your mind and plead not guilty. Do you understand that?

THE DEFENDANT: Yes, sir.

(*Id.* at 23.) The Court informed Raines that the maximum sentence for mail fraud was twenty years and the maximum sentence for money laundering was ten years, and Raines agreed that he understood. (*Id.* at 24.) Raines agreed that he and counsel had discussed the sentencing guidelines and agreed that "right now nobody knows exactly what your sentence, what your guideline sentence will be." (*Id.* at 27.) Raines also agreed that he understood that the Court was "not bound by the Guidelines" and that the Court could "give [him] a sentence high than the guidelines sentence range or below the guideline sentence range." (*Id.* at 27.)

Raines's statements that counsel "pressured and coerced Mr. Raines into accepting a plea deal by lying to him about the government agreeing to request sentencing within the assigned guidelines of 46-57 months or less" (ECF No. 57, at 4 (internal quotation marks omitted)), are "'palpably incredible' and 'patently frivolous or false'" in light of his sworn assurances during his plea proceeding that no one had pressured him or coerced him into pleading guilty and that there was no agreement on a specific sentence. *See Lemaster*, 403 F.3d at 221 (citations omitted); (ECF No. 75, at 18, 22–23). Thus, because Raines has demonstrated no extraordinary circumstances, "the truth of [his] sworn statements made during [the] Rule 11 colloquy [are] conclusively established." *Id.* at 222. Accordingly, Claim One lacks merit and will be DISMISSED.[2]

---

[2] Raines also argues that "[c]ounsel told Mr. Raines that if he agreed to plead guilty to the lesser charge, they would not investigate any further charges. However, a private firm investigated, and the government added that information to increase his sentence and amount of restitution." (ECF No. 57, at 4.) Assuming the "they" Raines identifies is the government, from Raines's allegations alone, it does not appear that the government conducted any further investigation and therefore it is unclear why Raines believes counsel was deficient in his alleged

In Claim Four, Raines contends that counsel rendered ineffective assistance when he "failed to obtain a psychiatric evaluation on Mr. Raines." (ECF No. 57, at 8.) According to Raines,

> Mr. Raines has a history of mental illness and has never had the opportunity for any type of mental health treatment. He was diagnosed with ADD as a young adult, but suffered from ADD characteristics throughout childhood. He also suffers from depression, anxiety and paranoid episodes, which he has attempted to manage with alcohol. It is also thought that Mr. Raines suffers from Bipolar Disorder due to his poor judgment and risky behavior. Depression and ADHD have been linked to gambling.

(ECF No. 57, at 8.) The Court believes that this claim derives entirely from exchanges that occurred at sentencing.[3] Counsel explained that Raines's embezzlement was a product of his gambling and alcohol addictions. The Court then asked if Raines had bipolar disorder and Raines himself answered in the negative. (ECF No. 67, at 52.) The Court then inquired whether Raines had been tested for bipolar disorder or examined by a psychiatrist or psychologist. (*Id.* at 52.) Counsel responded that Raines had not been, but that he had gone to therapy, and counsel then noted that he did not intend to suggest to the Court that Raines was bipolar. (*Id.* at 52–53.)

Raines fails to identify any deficiency of counsel by not sending Raines for a psychiatric evaluation or resulting prejudice. At most, Raines contends that psychiatric evaluations "can significantly influence the outcome of sentencing." (ECF No. 57, at 8.) This is entirely conclusory and speculative and fails to state a claim for relief.

In his reply, Raines seemingly abandons his allegations about ADD and alleged bipolar disorder. Instead, Raines insists that his "offense was driven by severe gambling and alcohol addiction," explains that he received a diagnosis for both, and now proffers records from those

---

advice. In addition, Raines said under oath that there were no other side deals beyond what was contained in the plea agreement.

[3] Raines's diagnosis of ADD and treatment for ADD were also discussed at his plea hearing. (ECF No. 75, at 6–7.)

11

evaluations in September of 2024.  (ECF No. 63 at 5; ECF No. 74.)  However, Raines's gambling and alcohol addictions were well documented and extensively discussed during sentencing. Counsel presented extensive mitigating evidence about Raines's alcoholism, gambling addiction, and how those addictions played into his criminal activity, and then explained how Raines had been working hard to overcome these addictions through AA, counseling, church, and volunteering.  Counsel explains that it was a strategic choice to focus on these specific factors. Counsel avers: "The Judge made clear at the plea date that Mr. Raines's continued sobriety and AA counseling were important factors in his sentencing.  To that end, our sentencing arguments focused on the fact that Mr. Raines went above and beyond in his treatment and sobriety in the months leading up to sentencing." (ECF No 62-1, at 1.)  Counsel also notes that he "chose to focus on his commitment to recovery and avoiding the triggers that led to the conduct in his case."  (*Id.*)

The Court fails to discern, and Raines fails to identify, how a psychiatric evaluation would have had any impact on the Court's determination of his sentence.  Indeed, Raines's 2024 psychiatric evaluations revealed what the Court already knew—that he suffered from alcoholism and gambling addictions.  Raines fails to identify and deficiency of counsel or resulting prejudice. Claim Four lacks merit and will be DISMISSED.

### III.    MISCELLANEOUS CLAIMS

#### A.    Alleged Judicial Bias (Claim Two)

In Claim Two, Raines contends that "Mr. Raines was prejudiced in the Court" because "the Judge was biased due to the media publicity this case received." (ECF No. 57, at 5.) Raines argues that the attendance of "fund supporters and media in attendance" at his sentencing "directly pressured and influenced the judge's decision" to impose an upward variance.  (*Id.*)  In his reply, Raines cites the Court's statement at sentencing about the need for deterrence: "I don't know if

anybody from the press is here today . . . Let me just send a message. I thought I had [said] this a while back, that you cannot steal from agencies of the Commonwealth and get away with it." (ECF No. 63, at 8 (citing ECF No. 67, at 47).) However, Raines fails to demonstrate any bias of the undersigned in fashioning Raines's sentence. Raines's sentence was based on consideration of a number of permissible factors under § 3553(a) that were clearly spelled out by the Court.[4]

To the extent that Raines believes the Court was biased, the bar for recusal is high,[5] as "courts have only granted recusal motions in cases involving particularly egregious conduct." *Belue v. Leventhal*, 640 F.3d 567, 573 (4th Cir. 2011). In addition, "judicial rulings alone almost never constitute a valid basis for bias" or a valid reason to demand recusal of a judge. *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citation omitted). Raines has not demonstrated that the Court harbors any bias against him or any circumstance where the impartiality of the undersigned might be reasonably questioned.

---

[4] In his reply, Raines cites to the case *United States v. Bakker*, 925 F.2d 728 (4th Cir 1991), for the proposition that the Court took impermissible factors into consideration when sentencing him because of its emphasis on deterrence and statement about the media. (ECF No. 63, at 8–10.) However, despite Raines's characterization of *Bakker*, the Court finds it inapposite. In *Bakker*, a judge abused his discretion by "impermissibly taking his own religious characteristics into account in sentencing," and "the imposition of a lengthy prison term [t]here may have reflected the fact that the court's own sense of religious propriety had somehow been betrayed." *Id.* at 740–41. Here, at most, the Court emphasized the need for deterrence, which is a permissible factor to consider under the guidelines. 28 U.S.C. § 3553(a)(2)(B).

[5] The recusal statute provides, in relevant part:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

28 U.S.C. § 455.

To the extent that Raines contends that the Court "erred when it failed to adequately consider a departure prior to imposing an upward variance" and that it "did not follow the procedure consistent with finding a departure under U.S.S.G. § 4A1.3," (ECF No. 57, at 5), these allegations are too vague and conclusory to state a claim for relief. *Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it "stated only bald legal conclusions with no supporting factual allegations"); *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (explaining that "vague and conclusory allegations contained in a § 2255 may be disposed of without further investigation" (citation omitted)).

Claim Two lacks merit and will be DISMISSED.

### B.    Alleged Prosecutorial Misconduct (Claim Three)

In Claim Three, Raines contends that "[t]he prosecution erred when they argued for a higher sentence as a deterrent due to this not being the first time the VBIF was a target of a 'crooked insider.'" (ECF No. 57, at 7.) However, under 18 U.S.C. § 3353(a), the Court must consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Therefore, the government could appropriately argue that Raines was not the first person to steal from the VBIF fund and that a higher sentence should be imposed to deter such conduct. Raines fails to demonstrate that the government's argument for deterrence amounts to prosecutorial misconduct.[6] Claim Three lacks merit and will be DISMISSED.[7]

---

[6] The Court also was required to look at the sentences of defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6).

[7] In his reply, Raines has expanded his arguments and claims from his § 2255 motion. For example, he argues about the procedural reasonableness of his sentence and includes sections that are not related to or linked to any claim, such as "EVIDENCE OF REHABILITATION." (*See, e,g.*, ECF No. 63, at 11–15.) However, any new claims or allegations brought for the first time in a reply are not properly before the Court. "[I]t is axiomatic that [a petition] may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a [petition] at will, even without filing an amendment, and simply by

14

## IV.    CONCLUSION

The § 2255 Motion (ECF No. 57) will be DENIED.  Raines's claims and the action will be DISMISSED.  A certificate of appealability ("COA") will be DENIED.[8]

An appropriate Final Order shall accompany this Memorandum Opinion.

Date: 5 August 2026
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge

---

raising a point in a brief." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (internal citations and quotation marks omitted).

[8] An appeal may not be taken from a final order in a § 2255 proceeding unless a judge issues a COA.  28 U.S.C. § 2253(c)(1)(B).  A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  Raines has not met this standard.

15